UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KING TORRES, on Behalf of Himself and all Others Similarly Situated, § § § | |
| Plaintiffs, § § | |
| v. § § | Civil Action No. 4:19-cv-00526 |
| AIR RESOURCES AMERICAS LLC, § § | |
| Defendant. § | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff King Torres ("Torres" or "Plaintiff"), on behalf of himself and on behalf of all others who have joined this case as opt-in plaintiffs (the "Opt-in Plaintiffs," and collectively with Torres, "Plaintiffs") and Defendant Air Resources Americas LLC ("Defendant" or "Air Resources," and collectively with Plaintiffs, the "Parties") file this Joint Motion for Approval of Settlement and would respectfully show the Court the following:[1]

### I.      INTRODUCTION

Plaintiff and Defendant have reached a confidential settlement of the pending *bona fide* dispute concerning allegations of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides current and/or former employees who were alleged to not have been overtime wages for all hours worked over forty in a workweek.

On February 15, 2019, Plaintiff filed this collective action lawsuit. There were three claims raised by Plaintiff. First, Plaintiff alleged that Defendant paid its workers on an hourly rate basis without overtime pay. Second, Plaintiff alleged that Defendant paid its workers on a day rate basis

---

[1] The Settlement Agreement is being filed under seal.

without overtime. Third, Plaintiff alleged that Defendant paid its workers on a salary basis but failed to meet the requirements to pay a salary but taking unlawful deductions.

On January 28, 2020, this Court certified this case as a collective action pursuant to the parties' stipulation. (Doc. 43). The Court certified the following collective:

> **All current and former health, environment and safety workers employed by Air Resources Americas, LLC on assignment to ExxonMobil who were, at any point during the three year period prior to the date the Court approves this stipulation to November 30, 2017, paid on an hourly basis or day rate without an overtime premium.**

(*Id.*).

The Notice of this lawsuit was then mailed to the Class Members and individuals joined this case by signing and return a consent form to join this lawsuit. The consent form executed by the Opt-In Plaintiffs states as follows:

> I authorized the named Plaintiff to file and prosecute the above referenced matter in my name, and on my behalf, and designate the named Plaintiff to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims, and understand I will be bound be such decisions.

(Dkt. 45-1).

During the discovery period, the Parties exchanged significant information as to the claims of the Plaintiff and Opt-in Plaintiffs and the defenses raised by Defendant. Defendant provided Plaintiffs' Counsel with pay records, time records, and work schedules for the Plaintiffs during the relevant time period covered by this lawsuit. Additionally, Plaintiffs' Counsel deposed the 30(b)(6) representative of Defendant. With this information, the Parties calculated the potential damages they believed could be available to the Plaintiffs.

The Parties then engaged in extensive settlement talks. The Parties discussed the strengths and weaknesses of Plaintiffs' claims, Defendant's defenses, and the damages that could be available should Plaintiffs prevail. Their efforts to reach a settlement was at first unsuccessful.

The Parties then attended mediation with Dennis Clifford, a mediator with extensive experience handling unpaid wage claims under the Fair Labor Standards Act. With the assistant of Mr. Clifford, the Parties reached a settlement. The final terms of the settlement are reflected in the Confidential Settlement Agreement and Release of Claims (the "Settlement Agreement").

## II.     ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* Some "[c]ourts therefore have refused to enforce wholly private settlements." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Instead, many courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the

3

settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case and resolves the claims of the Plaintiff and Opt-In Plaintiffs

**A.     The terms of the settlement provide for fair compensation for the claims raised in the lawsuit.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiff and Opt-in Plaintiffs. The damages that were calculated were based upon the actual records showing the amount paid to each Plaintiff and Opt-in Plaintiffs. Plaintiffs' Counsel calculated the damages for each period of time when the Plaintiffs were paid (1) on an hourly rate basis, (2) on a day rate basis, and (3) on a salary basis. The potential damages were calculated for the period of time when the Plaintiffs were paid on an hourly rate basis by multiplying the regular rate of pay by 1.5 for each hour worked over 40 in a workweek. For the day rate period, the potential damages were calculated using the formula identified in 29 C.F.R. § 778.112. For the period of time when the Plaintiffs were paid on a salary basis, the potential damages were calculated using the method in 29 C.F.R. § 778.114. The amount claimed to be owed during the statutory period was calculated for each Plaintiff and Opt-in Plaintiff for each week that they worked during the statutory period. The total amount claimed to be owed for each individual was then added together to determine the total alleged unpaid overtime wages for the Plaintiffs.

4

The settlement is fair and reasonable because the amount is greater than the amount they may have recovered during litigation on the two year limitations period. Under the FLSA, the statute of limitations for bringing a wage claim is two years. The limitations period may be extended to three years if the Plaintiffs prove willfulness – which is a higher standard. Here, the settlement provides for a recovery that is approximately 120% of the total amount owed for unpaid wages on the two year limitations period.

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case. Plaintiff argued that he and the Opt-in Plaintiffs were underpaid they were not paid overtime at the rate of time and one half their regular rate of pay when they were paid on an hourly rate basis, and that they were owed overtime wages when they were paid on a day rate basis and salary basis. Defendant countered that any potential damages that were owed when the Plaintiffs were paid on an hourly rate basis were largely in the third year and thus, barred by the statute of limitations. Defendant further argued that no damages were owed when the Plaintiffs were paid on a day rate basis or salary basis.

The Parties disagreed as to whether the Plaintiff could satisfy his burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiffs could recover damages for two (2) years or three (3) years prior to the date on which they joined this lawsuit. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether Defendant would satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Parties.

Additionally, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for these payments, the Plaintiff and Opt-in Plaintiffs will agree to release Defendant from any and all wage and hour claims they may have.

**B.      The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The proposed Settlement Agreement is fair to the Plaintiff and Opt-in Plaintiffs because it provides for a settlement for the Plaintiff and Opt-in Plaintiffs with damages calculated based upon the actual records for the Plaintiffs, with each Opt-in Plaintiff allocated a separate amount based upon his/her dates of employment, hours worked, and total pay.

The settlement allows each Opt-in Plaintiff to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Opt-in Plaintiffs in the aggregate, net of attorneys' fees and costs. That is, hypothetically, if a Opt-in Plaintiff is owed $2,000 and the total settlement amount is $100,000, his/her proportionate share of the settlement is two percent (2%) and he/she will receive that percentage of the settlement proceeds after fees and costs have been deducted. The pro rata allocation to each Opt-in Plaintiff is set forth in the Settlement Agreement.[2] The average amount owed per Plaintiff is approximately $20,000.00 per Plaintiff after payments for fees and expenses.

In determining the reasonableness of the settlement, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The

---

[2] When determining the amount owed per Plaintiff for purposes of the allocation amongst each of the Plaintiffs, any amount owed for the period of time when the Plaintiffs were paid on an hourly rate basis was given 100% credit. Any period of time when the Plaintiffs were paid on a day rate basis was given 75% credit. Any period of time when the Plaintiffs were paid on a salary basis, was given a 50% credit. These credits are designed to reflect the unsettled nature of the law as to some of the claims.

6

NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**.  Measured against that standard, the settlement in this case is exemplary.  Under the Plaintiffs' theory of the case, the Plaintiffs have successfully prevailed.

Moreover, the average recovery of over $20,000 per Plaintiff is significant; it is greater than the average recoveries in other wage-and-hour settlements. Attached hereto as Exhibit "1" is a 2019 NERA study of trends in wage and hour settlements.  This study found that the overall median per-plaintiff settlement value in wage-and-hour cases was $1,412. (*See* Exhibit "1" at page 1). Notably, this study examined wage-and-hour settlements that released claims and penalties under various state laws. Based on the NERA study, the per-person result in this case is highly favorable in comparison to typical settlements. *See also Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (reasoning that "the results obtained for the Class Members were very favorable" where the average recovery was $183.70); *Ontiveros v. Zamora*, 2014 WL 3057506, at *14 (E.D. Cal. July 7, 2014) (observing that average recovery of $6,000 was "a generous amount" for a wage and hour case, and collecting cases approving far lower per-class member averages); *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (reasoning that average recovery of over $2,000 per Plaintiff was a "favorable" result); *Khanna v. Intercon Sec. Sys., Inc*., 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014).

Using any objective measure, the Settlement reflects a significant recovery for the Plaintiffs.

As part of the settlement, the Parties agreed to a Service Award for Plaintiff King Torres. Otherwise known as a "service payment" or "incentive award," this amount is in addition to his pro rata settlement share.  In light of the efforts resulting in a settlement on behalf of the Opt-in

Plaintiffs, the valuable contributions Mr. Torres made throughout the litigation, particularly in its initial phases, Plaintiffs' counsel submits that the incentive award is reasonable.

### C. The Parties have agreed on a fair and reasonable notice plan to administer the settlement.

The Parties have agreed to self-administer this settlement. Defendant will mail to Plaintiffs' Counsel the individual settlement checks within 15 days of approval of the settlement, and Plaintiffs' Counsel will send the checks to the Plaintiffs along with a copy of the Notice attached to the Settlement Agreement as Exhibit B, which explains the key terms of the settlement and the Plaintiffs' release of claims. All Opt-in Plaintiffs will receive a payment from this settlement. The release of claims for the Opt-in Plaintiffs is a release of wage and hour claims only. This settlement process is fair and equitable to all Parties and eliminates the need for a separate claim form.

### D. The attorneys' fees sought are fair and reasonable.

Additionally, the amount sought by Plaintiffs' counsel for attorneys' fees is fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiff's Counsel investigated the claims, analyzed pay data, managed communication with all Opt-in Plaintiffs, and performed other work that resulted in a settlement.

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Under Plaintiffs' theory of the case, Plaintiffs' Counsel has prevailed in securing compensation for its clients. They acquired a collective settlement that provides recovery for each Opt-in Plaintiff. Under Defendant's theory, the Opt-in Plaintiffs would be owed nothing.

Moreover, Plaintiffs' Counsel has acquired a collective settlement that provides for a significant percentage of Plaintiffs' estimated damages given the facts of the case and the relative merits of, and risks related to, Plaintiffs' claims and Defendant's possible defenses. As noted earlier, the settlement provides for approximately 120% of the total damages under a two year limitations period.

Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had viable claims. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to the Plaintiffs in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Plaintiffs. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Plaintiffs were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

### E. The settlement should be approved by the Court.

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive*

*Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement amount, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Plaintiffs. Each of the Plaintiffs will receive payment for their alleged damages under federal law without the risk or expense of continued litigation or trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III. CONCLUSION

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request that the Court approve the FLSA settlement.

For the foregoing reasons, the Parties respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

| | |
|---|---|
| */s/ Don J. Foty* | */s/ Mark J. Levine* |
| Don J. Foty | Mark J. Levine |
| State Bar No. 24050022 | Weycer, Kapan, Pulaski & Zuber, P.C. |
| Hodges & Foty, LLP | State Bar No. 00791102 |
| 4409 Montrose Blvd., Suite 200 | 1400 Summit Tower |
| Houston, Texas 77006 | Eleven Greenway Plaza |
| Telephone: 713.523.0001 | Houston, Texas 77046 |
| Facsimile: 713.523.1116 | Telephone: (713) 961-9045 |
| Email: dfoty@hftrialfirm.com | Facsimile: (713) 961-5341 |
| | Email: mlevine@wkpz.com |
| **ATTORNEY FOR PLAINTIFF** | **ATTORNEY FOR DEFENDANT** |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been filed with the Court's electronic case filing system on May 25, 2023 which will forward a copy to Defendant.

*/s/ Don Foty*
Don Foty